**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| RAHSAAN SMITH,<br><br>                Plaintiff,<br>v.<br>NICHOLAS PALERMO, *et al.*,<br>                Defendants. | HONORABLE KAREN M. WILLIAMS<br><br>Civil Action<br>No. 20-14405 (KMW-MJS)<br><br>**MEMORANDUM OPINION AND ORDER** |

**Rahsaan Smith,** *pro se*
64 Carnegie Avenue
East Orange, NJ 07018

**Salvatore J. Siciliano, Esquire**
Siciliano & Associates, LLC
2 Kings Highway West
Haddonfield, NJ 08033
*Counsel for Nicholas Palermo, William Joas, County of Camden, Colin Lex, and Marcus Taylor*

**WILLIAMS, District Judge:**

### I.  INTRODUCTION

1)  This case arises out of Plaintiff Rahsaan Smith's ("Smith") arrest following the report of an active shooter. On December 21, 2019, Defendant Marcus Taylor ("Taylor") initiated a foot pursuit of Smith after receiving the description of a shooter that he believed matched Smith's physical appearance. When Taylor caught up to Smith, he knocked Smith to the ground to effectuate the arrest. Smith was arrested and transported to Cooper Hospital after becoming unresponsive. Smith was later diagnosed with a fractured orbital.

2) Smith, proceeding *pro se*, brings this Section 1983 suit alleging that Defendants Nicholas Palermo ("Palermo"), William Joas ("Joas"), Colin Lex ("Lex"), and Taylor (collectively, the "Officers") and the County of Camden ("Camden") (collectively, the "Defendants") violated his Fourth Amendment right by using excessive force to arrest him. Presently before the Court is Defendants' Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56. Smith has opposed the Motion. For the reasons that follow, Defendants' Motion is **GRANTED**.

3) As a preliminary matter, the Court evaluates the legal sufficiency of Smith's claims against certain parties he names in his Complaint. First, in his Complaint, Smith brings this action against the Officers and Camden but does not indicate whether he brings this lawsuit against the Officers in their individual capacities, their official capacities, or both. (ECF No. 1). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (internal citation omitted). Accordingly, where claims against an officer in his or her official capacity are duplicative of claims against the municipality, those claims are considered redundant. *See, e.g., Baez v. Lancaster Cnty.*, 487 F. App'x 30, 32 (3d Cir. 2012) (affirming district court's finding of summary judgment in favor of warden in his official capacity because that claim was duplicative of suit against county); *Cuvo v. De Biasi*, 169 F. App'x 688, 693 (3d Cir. 2006) (affirming district court's dismissal of claims against officers in their official capacities because lawsuit against public officers in their official capacities is functionally a suit against public entity that employs them). To the extent Smith brings this lawsuit against the Officers in their official capacities, summary judgment is entered in their favor because Smith's Section 1983 claim against them is entirely duplicative of his claim against Camden.

4) Second, to the extent Smith purports to bring a claim against Camden, municipal liability under Section 1983 requires that the municipality itself caused the underlying constitutional violation. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (stating where a municipality is charged with liability for a constitutional violation pursuant to Section 1983, liability can attach to the municipality "only where the municipality itself causes the constitutional violation"). As set forth more fully later in this opinion, Smith has not presented any evidence demonstrating that the Officers violated his Fourth Amendment right and, therefore, any related federal claims asserted against Camden fail as a matter of law. *See Mulholland v. Gov't Cnty. Of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) ("It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim."). Accordingly, summary judgment is entered in favor of Camden.

5) Lastly, as the Complaint relates to the named defendants, the Court notes that Smith identifies Camden County Police Department ("Camden Police") as a defendant. (ECF No. 1). However, "[i]n Section 1983 actions, police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity." *Padilla v. Twp. of Cherry Hill*, 110 F. App'x 272, 278 (3d Cir. 2004). Accordingly, summary judgment is entered in favor of Camden Police.

## II.   BACKGROUND

6) On December 21, 2019, at approximately 8:00 p.m., Taylor and Lex were dispatched to the 1100 Block of Sheridan Street in Camden in response to a shooting incident. Defendants' Statement of Material Facts ("Defs.' SMF ") ¶ 2; Defs.' Br. at Ex. C at 10. This area is a well-documented high crime and drug area with recent activity of violence and shot spotter activations. Defs.' Br. at Ex. C at 10. After receiving the shooter's description from a witness,

3

Taylor observed Smith walking nearby, believed that Smith matched the shooter's description, and called Palermo for backup. Defs.' Br. at Ex. C at 10-11. When Palermo reached the scene, he ordered Smith to "stop" so that officers could speak with him. Defs.' SMF ¶ 3; Defs.' Br. at Ex. C at 11. Smith ignored Palermo's commands and instead turned and ran. Defs.' SMF ¶ 4; Defs.' Br. at Ex. C at 11. Taylor pursued Smith, eventually caught up to him, and struck Smith with his right shoulder, knocking him to the ground.[1] Defs.' SMF ¶¶ 4, 5; Defs.' Br. at Ex. C at 11. Joas arrested Smith. Defs.' Br. at Ex. C at 11. When Taylor searched Smith incident to the arrest, he uncovered a 9mm handgun from Smith's person. Defs.' SMF ¶ 7. Importantly, in his responses to Defendants' request for admissions, Smith admits that he "was arrested after attempting to flee the scene after Officers arrived attempting to apprehend him." Defs.' Br. at Ex. B at 2. Smith also admitted the Officers "pursued [him] on foot to apprehend him in connection with the previously reported Shot Spotter activation." Defs.' Br. at Ex. B at 3.

7) It is also undisputed that Smith was injured at the time of his arrest and transported to Cooper University Hospital after becoming unresponsive. Defs.' SMF ¶ 8. Following a medical evaluation, Smith was diagnosed with a fractured orbital. *Id.* ¶ 9. Smith and medical staff noted Smith had suffered the same or similar injuries a few weeks prior on or about December 1, 2019.[2]

---

[1] Taylor's police report from the incident in question states he "attempted to stop [Smith], striking him with my right shoulder, [and] knocking [Smith] to the ground." Defs.' Br. at Ex. C at 11. During his deposition, Smith testified that while he was on the ground, he "felt a blow to [his] face" but could not identify who or what hit him. Defs.' Br. at Ex. A at 31:11-12; 32:7-20. The fact that Smith is unable to identify the officer who hit him is, in and of itself, fatal to his claim for excessive force. *See Anela v. City of Wildwood*, 790 F.2d 1063, 1068 (3d Cir. 1986) (upholding directed verdict in favor of individual defendant officers in Section 1983 action where plaintiffs could not identify officers alleged to have violated their constitutional rights); *see also Jenkins v. Wood*, 81 F.3d 988, 994-95 (10th Cir. 1996) (affirming summary judgment in favor of defendant officers to Section 1983 excessive force claims arising from search of plaintiffs' home pursuant to warrant where plaintiffs could not identify officers who had applied excessive force and evidence only revealed that defendant officers were in plaintiffs' home when alleged violations occurred); *Thornton v. Spooner*, No. 86-3944, 1989 WL 34026, at *2 (6th Cir. Mar. 21, 1989) (affirming summary judgment to Section 1983 excessive force claim arising out of plaintiff's arrest where plaintiff was unable to identify officer who allegedly pushed him into police car).

[2] When Smith sought medical treatment for the December 1, 2019 injury, he admitted himself to the hospital under his nephew's name rather than his own name because he had an outstanding arrest warrant. Defs.' SMF ¶ 11; Defs.'

4

*Id.* ¶ 10. Medical staff advised Smith that the fractured orbital was either a reaggravated injury or a new injury. Defs.' Br. at Ex. C at 3, 11, 12. Smith was subsequently charged, convicted, and sentenced for unlawful possession of a handgun. Defs.' SMF ¶ 12.

### III. LEGAL STANDARD

8) A court may grant summary judgment only when the materials of record "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir. 1983). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. *Id.* Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Id.*

9) In considering a summary judgment motion, the district court "may not make credibility determinations or engage in any weighing of the evidence." *Montone v. City of Jersey City*, 709 F.3d 181, 191 (3d Cir. 2013). The moving party has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party meets its burden, the burden shifts to the non[-]moving party to go beyond the pleadings and 'come forward with "specific facts showing that there is a genuine issue for trial."'" *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). To survive a motion for summary judgment, the non-moving party must identify specific

---

Br. at Ex. A at 22:20-23. For this reason, the parties have not been able to obtain Smith's records from that visit. Defs.' SMF ¶ 11.

5

facts and affirmative evidence that contradict those offered by the moving party. *See Anderson*, 477 U.S. at 256-57. "A non-moving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991)). When considering a motion for summary judgment, the Court views the facts and all reasonable inferences drawn from the facts in the light most favorable to the non-moving party. *See Matsushita*, 475 U.S. at 587.

        10)     While courts must hold *pro se* pleadings to "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), at summary judgment, a *pro se* plaintiff is not exempt from his or her burden of providing some affirmative evidence, i.e. not just mere allegations, to establish a prima facie case, and to show that there is a genuine dispute for trial. *See Barnett v. N.J. Transit Corp.*, 573 F. App'x 239, 243 (3d Cir. 2014) (holding that *pro se* plaintiff was still "required to 'designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories . . . sufficient to convince a reasonable fact finder to find all the elements of [her] prima facie case'") (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 266 (3d Cir. 2007) (alteration in original))); *Mitchell v. Gershen*, 466 F. App'x 84, 87 (3d Cir. 2011) (upholding a district court's grant of summary judgment against a *pro se* plaintiff for his failure to submit expert testimony in a denial of medical services suit); *Siluk v. Beard*, 395 F. App'x 817, 820 (3d Cir. 2010) ("[T]he right of self-representation does not exempt a party from compliance with relevant rules of procedural law."). Summary judgment is appropriate on a Fourth Amendment claim for excessive force ". . . if, as a matter of law, the evidence would not support a reasonable jury finding that the police officers' actions were objectively unreasonable." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995).

## IV. DISCUSSION

11) Section 1983 provides a cause of action for an individual whose constitutional or federal rights are violated by those acting under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 does not on its face create substantive rights. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). Rather, "it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Id.* To establish a claim under Section 1983, a plaintiff "must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law." *Mosca v. Cole*, 217 F. App'x 158, 163 (3d Cir. 2007) (alteration in original) (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995)).

12) The Fourth Amendment prohibits police officers from using excessive force to arrest a suspect. *See Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999). "To prevail on a Fourth Amendment excessive-force claim, a plaintiff must show that a seizure occurred and that it was unreasonable under the circumstances." *El v. City of Pittsburgh*, 975 F.3d 327, 336 (3d Cir. 2020) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 182-83 (3d Cir. 2011)). A seizure triggering Fourth Amendment protection occurs when a government actor "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). Because it is undisputed that Smith was arrested, the first element is satisfied. Thus, the only question remaining before the Court is the reasonableness of the seizure.

13) To determine the reasonableness of a seizure, the Court asks whether the officer's conduct was "objectively reasonable" in light of the totality of the circumstances, without regard to the underlying intent or motivation. *Graham v. Connor*, 490 U.S. 386, 397 (1989); *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004). The "objective reasonableness" inquiry requires an examination of the "facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he [or she] is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. The Court may also consider "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997); *see also El*, 975 F.3d at 336. "[T]he central issue is the force the officers employed (and whether it was reasonable under the circumstances), not the injury they caused." *Flood v. Schaefer*, 439 F. App'x 179, 182 (3d Cir. 2011). In evaluating reasonableness, the Court must take into consideration that "police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Couden v. Duffy*, 446 F.3d 483, 497 (3d Cir. 2006) (quoting *Graham*, 490 U.S. at 397). The Court should not apply "the 20/20 vision of hindsight," but should instead consider the "perspective of a reasonable officer on the scene." *Id.*; *see also Kopec*, 361 F.3d at 777.

14) In evaluating the *Graham* and *Sharrar* factors against the undisputed record before this Court, Smith has not presented any evidence demonstrating that the Officers' conduct was objectively unreasonable in light of the totality of the circumstances. Here, the suspected crime

8

which prompted the Officers to pursue Smith was a shooting – undoubtedly, a severe crime. It is undisputed that when Palermo ordered Smith to stop near the scene where Taylor and Lex learned of the shooting incident and received a description of the shooting suspect, Smith ignored that command, turned around, and began running away from him. Smith continued to run until Taylor caught up to him and knocked him to the ground. Smith has not presented evidence demonstrating that he did not match the description of the suspect or that he did not attempt to evade arrest by running. Indeed, in his responses to Defendants' request for admissions, Smith admitted that the Officers' pursuit of him was in connection with a previously reported shot spotter activation and that he was arrested after attempting to flee from the Officers who were attempting to apprehend him.

15) Similarly, Smith does not provide any facts to even suggest that it was unreasonable for the Officers to believe he matched the description of the shooting suspect. Moreover, the undisputed events leading up to the arrest occurred in short order. Smith's interaction with the Officers began with a verbal command from Palermo to "stop," followed by a foot chase and arrest. It is also undisputed that the Officers' alleged excessive force occurred while they were attempting to arrest Smith. Because the undisputed record evidence establishes that Smith matched the description of a shooting suspect, the totality of the circumstances militates overwhelmingly in favor of the reasonableness of the Officers' actions. Moreover, Smith does not offer any evidence to refute the Officers' belief that he was dangerous.

16) It appears that Smith bases his excessive force claim on the fact that he sustained an injury during his arrest. The Supreme Court has explained that making an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396; *see Ference v. Twp. of Hamilton*, 538 F. Supp. 2d 785, 809 (D.N.J.

9

2008) (holding that some physical contact alone by police during arrest was insufficient to show excessive force because "[w]ere it otherwise, police officers might have to rely on verbal instructions alone to effect an arrest for fear of [S]ection 1983 liability"). Thus, not every push or shove is excessive force, *Graham*, 490 U.S. at 396, and, in some circumstances, even a "gratuitously violent shove" will still not rise to the level of excessive force. *Saucier v. Katz*, 533 U.S. 194, 208 (2001). Moreover, sustaining a physical injury during the course of an arrest does not serve as ironclad evidence that officers used excessive force. *See Pridgen v. Law*, 299 F. App'x 211, 211-12 (3d Cir. 2008) (affirming finding that officers did not exercise unlawful or excessive force during arrest even though plaintiff was diagnosed with broken facial bone as a result of officer throwing him to the ground); *see also Morris v. United States*, No. 12-2926, 2014 WL 7368899, at *13 (D.N.J. Dec. 29, 2014) (dismissing plaintiff's claims for excessive force even though plaintiff suffered injury to his eye socket because evidence established injury was unintended consequence of force used by officers which they found necessary to secure an uncooperative arrestee whose behavior posed a potential and immediate threat to the safety of the officers and who resisted arrest). Accordingly, Smith's injury cannot, alone, serve as a basis for an excessive force claim.

## V.   CONCLUSION

17)   In viewing the facts in the light most favorable to Smith, and in analyzing the *Graham* and *Sharrar* factors in their entirety, Smith has not met his burden of providing facts that could even arguably convince a reasonable fact finder that he has established all of the requisite elements that his Fourth Amendment rights were violated. Simply stated, the Officers pursued Smith, who they believed to be armed and dangerous because he matched the description of a shooting suspect. Consequently, in light of the profound lack of evidence, the Court finds that there

are no facts that would support a reasonable jury finding that the Officers' actions were objectively unreasonable. Therefore, summary judgment is granted.

## ORDER

IT IS this ___ day of October, 2023, hereby

**ORDERED** that Defendants' Motion for Summary Judgment [ECF No. 47] is **GRANTED.**

KAREN M. WILLIAMS
U.S. DISTRICT COURT JUDGE